IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**TERRY PICKVET,**

        **Plaintiff,**

v.

**VIKING GROUP, INC., and
SUPPLY NETWORK, INC.,**

        **Defendants.**

1:17-cv-320-WSD

**OPINION AND ORDER**

This matter is before the Court on Defendants Viking Group, Inc. ("Viking Group") and Supply Network, Inc.'s ("Supply Network") (together, "Defendants") Motion to Transfer Venue [3].

**I.   BACKGROUND**

Plaintiff, a citizen of Georgia, was employed by Defendant Supply Network.[1] In 2009, he entered into an employment agreement ("Employment Agreement") with Viking Group. ([2] at 22-27). The Employment Agreement has, in paragraph 2, a section entitled "Noncompetition," which contains certain

---

[1] The parties dispute whether Plaintiff was an employee of Supply Network, Viking Group, or both. Supply Network is a subsidiary of Viking Group.

restrictive covenants ("Restrictive Covenants"). The Restrictive Covenants are stated below:

> During the term of Employee's employment and for a period of two (2) years after that employment ends, Employee will not compete in any way with the business of the Company in the Southeastern US Sales Region. This area will include the states of North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Arkansas, Tennessee and Texas. This promise not to compete includes, but is not limited to, a promise that Employee will not engage in any of the following activities:
>
> a) Employee will not work with, for, or have any interest in, any organization that competes with the Company.
>
> b) Employee will not attempt to persuade any customer, supplier, or potential customer or supplier of the Company that they should not do business with the Company, should reduce their purchases of the Company's products or services, or should do business with a competitor of the Company.
>
> c) Employee will not sell or aid in the sale of any products or services that are competitive with any services or products of the Company to any customer or potential customer of the Company.
>
> d) Employee will not solicit, encourage or persuade any employee of the Company to terminate their employment with the Company or to take any action that adversely affects their ability to carry out their employment duties with the Company.

([2] at 25).

The Employment Agreement provides that any dispute arising under the agreement shall be filed in either Kent County Circuit Court or the Western

District of Michigan ("Forum Selection Provision").  (Id. at 27).   The agreement provides further that it shall be governed by Michigan law ("Choice of Law Provision").  (Id.).

On January 23, 2017, Plaintiff terminated his employment with his employer and began working for Winsupply, Inc. ("Winsupply"), a company that competes with Viking Group in the sprinkler products business.

On January 23, 2017, Plaintiff filed a Complaint [1.1] in the Superior Court of Fulton County, Georgia (the "Georgia Action"), seeking a declaratory judgment that the Restrictive Covenants are not enforceable against him and do not restrict his employment with Winsupply.  It was not served on Viking Group until January 26, 2017.

On January 26, 2017, Defendant Viking Group filed a complaint in the Circuit Court in Kent County, Michigan, alleging that Plaintiff breached his employment agreement and seeking to enforce the agreement against Plaintiff. See Viking Grp., Inc. v. Pickvet, No. 1:17-cv-103-PLM-PJG (W.D. Mich. 2017) (Dkt. No. 1.1) ("Michigan Action").  Viking Group asserts that it did not know about the Georgia Action until after the Michigan Action was filed.

On January 27, 2017, Defendants removed the Georgia Action to this Court and Paintiff filed his Motion for Injunctive Relief and Motion for Expedited

Hearing [2]. In the motion, Plaintiff seeks to enjoin the Restrictive Covenants on the ground that they are not enforceable in Georgia. He contends that the Forum Selection Provision should not be enforced, and that he was permitted to file the Georgia Action in Georgia because enforcing the Forum Selection Provision and the Restrictive Covenants would violate Georgia law and Georgia public policy. On January 30, 2017, Plaintiff removed the Michigan Action to the United States District Court for the Western District of Michigan.

On January 31, 2017, Defendants filed their Motion to Transfer Venue, seeking to transfer the now-removed Georgia Action to the Western District of Michigan. Defendants argue that the Forum Selection Provision is enforceable, Plaintiff was required to file his action in Michigan, and this action should be transferred to Michigan because Plaintiff cannot meet his burden to show that the Western District of Michigan would enforce the Restrictive Covenants even if it would offend the laws and public policy of Georgia.

On February 2, 2017, the Court held a hearing on the Motion to Transfer Venue and Motion for Injunctive Relief.

## II. DISCUSSION

Defendants move to transfer this case to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a). A forum selection clause "may be enforced

4

through a motion to transfer under § 1404(a)." Atl. Marine Constr. Co. v. U.S. District Court for W. Dist. of Tex., 134 S. Ct. 568, 579 (2013). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" Id. (quoting 28 U.S.C. § 1404(a)). The presence of a valid forum-selection clause requires, among other things, that a court not consider arguments about the parties' private interests. Id. "[A] district court may consider arguments about public-interest factors only." Id. These public interest considerations "will rarely defeat a transfer motion," and a forum-selection clause "should control except in unusual cases." Id. The party acting in violation of the forum-selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." Id. at 583.

Plaintiff argues that the Forum Selection Provision and the Choice of Law Provision would produce a result that is contrary to Georgia public policy. Forum-selection clauses in employment contracts are "prima facie valid" under Georgia law. Carson v. Obor Holding Co., LLC, 734 S.E.2d 477, 481 (Ga. Ct. App. 2012). Georgia courts, however, "have held that if a party can show both that a restrictive covenant violates Georgia public policy and that a court in the selected forum likely would find the restrictive covenant enforceable, a compelling reason exists to avoid the contractual forum selection clause." Id. To make this showing, the party seeking to invalidate a forum selection clause "must demonstrate that a [foreign] court likely would apply [foreign] law and that, under [the foreign] law, the covenants likely would be enforceable." Id.

Georgia is one of the very few states that has a public policy that historically disfavors restrictive covenants.[2] See Atlanta Bread Co. Intern., Inc.

---

[2]   In November 2010, Georgia voters approved a constitutional amendment that substantially altered Georgia's public policy on restrictive covenants. As a result of the constitutional amendment, Georgia enacted new statutory provisions governing restrictive covenants in employment contracts. See O.C.G.A. § 13-8-50, et seq. Georgia law provides that the new law "shall not apply in actions determining the enforceability of restrictive covenants entered into before" the ratification of the constitutional amendment. Carson v. Obor Holding Co., LLC, 734 S.E.2d 477, 480 n.1 (Ga. Ct. App. 2012). Accordingly, for pre-ratification contracts, Georgia courts will "apply the law of restrictive covenants as it existed before [ratification]." Id. (citation omitted).

v. Lupton-Smith, 679 S.E.2d 722, 724 (Ga. 2009) ("Contracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them . . . .; tend to deprive the public of services of people in the employments and capacities in which they may be most useful to the community as well as themselves; discourage industry and enterprise, and diminish the products of ingenuity and skill; prevent competition and enhance prices, and expose the public to all the evils of monopoly." (alterations omitted) (quoting Rakestraw v. Lanier, 30 S.E. 735 (Ga. 1898))). Restrictive covenants in an employment agreement "will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public." W.R. Grace & Co. v. Mouyal, 422 S.E.2d 529, 531 (Ga. 1992). Georgia courts generally look to three factors to determine whether a restrictive covenant is reasonable: (i) the duration of the restrictions, (ii) their territorial coverage, and (iii) the scope of restricted activities. See id.

Georgia courts have established certain strict reasonableness standards. For example, restrictive covenants are reasonable if (i) the restriction period does not exceed two (2) years following contract termination, and (ii) the restriction only applies to clients the employee actually served during the contract term. See

Murphree v. Yancey Bro. Co., 716 S.E.2d 824, 827 (Ga. Ct. App. 2011). Periods of restriction exceeding two years following a contract's termination are generally unreasonable and unenforceable. See Swartz Inv., LLC v. Vion Pharm., Inc., 556 S.E.2d 460, 464-65 (Ga. Ct. App. 2001). If the person subject to the covenant is prohibited from serving or seeking business from clients that the person did not serve during the contract term, the restrictive covenant must contain a reasonable territorial restriction to be enforceable. See Carson, 734 S.E.2d at 482. Finally, where a restrictive covenant seeks to prohibit post-termination business activities in which a former employee did not engage and otherwise is unrelated to the former employee's business, the restriction is considered unreasonable. Mouyal, 422 S.E.2d at 532

Assuming, for the purposes of this Order, that application of Michigan law to the Restrictive Covenants would be contrary to Georgia public policy, Plaintiff fails to meet his burden to demonstrate that the Western District of Michigan likely would apply Michigan law rather than the apparently more restrictive policy in Georgia. Michigan courts and the Sixth Circuit follow Section 187 of the Restatement (Second) of Conflict of Laws. See Delphi Auto. PLC v. Absmeier, 167 F. Sup. 3d 868, 875 (E.D. Mich. 2016) (citing Kipin Indus., Inc. v. Van Deilen Intl'l, Inc., 182 F.3d 490, 493 (6th Cir. 1999)); see also Performance Contracting,

8

Inc. v. DynaSteel Corp., 750 F.3d 608, 611 (6th Cir. 2014). Section 187 provides that a contractual choice of law provision is binding unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2).

Here, the Court finds Michigan is likely to apply Georgia law under Section 187(2)(b). Crump Ins. Servs. v. All Risks, Ltd., 727 S.E.2d 131 (Ga. Ct. App. 2012) is instructive here. In Crump, the Georgia Court of Appeals considered the validity of a forum-selection clause in a restrictive covenant requiring that any dispute be heard in Maryland court and governed by Maryland law. Judge Blackwell,[3] in a special concurrence, found that the parties seeking to invalidate the forum-selection clause failed to show a likelihood that a Maryland court would apply Maryland law to the covenant. He explained that, even assuming that the restrictive covenants violate Georgia law and that they would be enforceable under Maryland law, "[t]here is some reason to believe that a Maryland court would

---

[3] Judge Blackwell now is a justice on the Supreme Court of Georgia.

apply Georgia law to the restrictive covenants in this case . . . [because] Maryland follows Section 187 of the Restatement (Second) of Conflict of laws[.]"  Id. at 134-35.  In reaching this conclusion, Judge Blackwell relied in part on Hunter Grp., Inc. v. Smith, 9 F. App'x 215, 219 (4th Cir. 2001), a case in which the Fourth Circuit applied Section 187 to refuse to honor the contractual choice of Maryland law and instead applied Georgia law because "Georgia had a far greater relationship to the employment contracts and . . . the noncompete agreements violated Georgia's fundamental public policies."

Because the Employment Agreement at issue in this case was entered into in Georgia, Plaintiff lives in Georgia and worked under the contract in Georgia, several of the customers allegedly covered by the Restrictive Covenant do business in Georgia, and the geographic territory covered by the Restrictive Covenants includes Georgia—and not Michigan—it appears Georgia has a far greater relationship to the Employment Agreement than Michigan.  To the extent applying Michigan law to the Restrictive Covenants would, as Plaintiff claims, offend Georgia's fundamental policy regarding restrictive covenants, the Court predicts the Western District of Michigan, pursuant to Section 187(2)(b), would apply

Georgia law.[4]  The Court finds Plaintiff fails to show that the Western District of Michigan is likely to apply law contrary to Georgia's public policy on restrictive covenant enforceability.  Because Plaintiff, the party in violation of the Forum Selection Provision, fails to meet his burden to show that public-interest considerations "overwhelmingly disfavor a transfer," Atl. Marine, 134 S. Ct. at 583, Defendants' Motion to Transfer is granted.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Transfer Venue [3] is **GRANTED**.  This action is hereby **TRANSFERRED** to the United States District Court for the Western District of Michigan.

**SO ORDERED** this 3rd day of February, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[4]     To the extent applying Michigan law would *not* produce a result contrary to the result under Georgia law, Plaintiff does not present any compelling public-interest rationale why the Forum Selection Provision should not be enforced.